IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Aryee Henderson,<br><br>  Plaintiff,<br><br>v.<br><br>Sgt. Frierson,<br><br>  Defendant. | Case No. 4:23-cv-03022-SAL<br><br><br>**ORDER** |

The matter is before the court on two Reports and Recommendations issued by United States Magistrate Judge Thomas E. Rogers (together, the "Reports"): (1) the magistrate judge's June 21, 2024, Report and Recommendation recommending the court deny plaintiff Aryee Henderson's two motions for a temporary restraining order and preliminary injunction (the "TRO Report"), ECF No. 82; and (2) the magistrate judge's October 23, 2024 Report and Recommendation recommending the court grant defendant Sergeant Jerrell Frierson's ("Sgt. Frierson") motion for summary judgment (the "Summary Judgment Report"), ECF No. 118. For the reasons below, the court adopts both Reports in full.

## BACKGROUND

Henderson is currently incarcerated with the South Carolina Department of Corrections and housed at the Lee Correctional Institution ("Lee CI"). One day in late-January 2022, Henderson began to stuff tissue in the padlock at the flap of his cell door. [*See* Am. Compl., ECF No. 61-1 ¶ 52.] Sgt. Frierson approached Henderson's cell door while Henderson stuffed tissue in the padlock and directed him to "get off the flap." *Id.* ¶ 55. The parties dispute whether Henderson stopped stuffing the padlock but, in any event, Sgt. Frierson testified that he walked away from Henderson's cell to retrieve a tool to unjam the padlock. [ECF No. 105-4, Sgt. Frierson Decl. ¶

1

5.] When Sgt. Frierson returned to Henderson's cell, he saw Henderson continue to, in his view, "sabotage" the lock. *Id.*; *see also* Am. Compl. ¶ 59 (alleging Henderson continued resumed stuffing the padlock after Sgt. Frierson walked away). Sgt. Frierson then "administered a short burst of chemical munition toward" Henderson and directed Henderson to release the flap and stop jamming the lock. Sgt. Frierson Decl. ¶ 7. Henderson alleges Sgt. Frierson did not warn him about the spray or direct him to stop , and he further alleges that he would have complied with such a warning. Am. Compl. ¶¶ 62, 65. Henderson also maintains he was not a threat to himself or to anyone else at the time Sgt. Frierson sprayed him. *Id.* ¶ 65. Sgt. Frierson allegedly did not utilize any de-escalation tactics before spraying Henderson. *Id.* ¶ 77.

Henderson alleges the spraying occurred directly in his face, causing the spray to get in his mouth, nose, eyes, ears, hair, and neck. *Id.* ¶ 69. Henderson's face, neck, ears, nose, and mouth burned all night "like it was on fire"; his nose ran with mucus all night; and he was blinded and couldn't see for hours. *Id.* ¶¶ 70–72. He also alleges the pepper spray caused him to suffer from loss of breath (for at least an hour), humiliation, anxiety, restlessness, lack of sleep due to an extreme burning sensation, loss of appetite, homicidal ideations, psychological and emotional distress, and mental anguish. *Id.* ¶ 73. A nurse "came to see" Henderson but did not give him anything to wipe off the paper spray or anything for his pain, and nobody took Henderson out of the cell to decontaminate in the shower. *Id.* ¶¶ 74–75.

Henderson sued Sgt. Frierson for violating his Eighth Amendment rights after filing Step 1 and Step 2 Grievances. [*See generally* Am. Compl.; *see also* ECF No. 61-2 at 3–6.] He seeks an award of compensatory damages in the amount of $150,000; punitive damages in the amount of $350,000; and to be placed within the Columbia Regional Care Center. Am. Compl. at 6. While

the litigation was pending, Henderson moved twice for a temporary restraining order and preliminary injunction because he was denied access to a law library, legal supplies, and the "U.S. Postal Mailbox." [*See generally* ECF Nos. 71 and 76.] The magistrate judge issued the TRO Report on June 21, 2024, recommending the court deny Henderson's requests for injunctive relief. [*See generally* ECF No. 82.] Henderson objected to the TRO Report on July 17, 2024. [*See generally* ECF No. 96.]

Sgt. Frierson later moved for summary judgment, arguing: (1) Henderson failed to exhaust his administrative remedies, so his claims were subject to dismissal under the Prison Litigation Reform Act (PLRA); (2) Henderson's claims against Sgt. Frierson in his official capacity are barred by the Eleventh Amendment; (3) there is no evidence to support any claim under 42 U.S.C. § 1983; (4) there is no evidence to support any claim of excessive force or any other claim under the Eight Amendment or for violations of the United States Constitution; (5) alternatively, Sgt. Frierson is entitled to qualified immunity under *Harlow v. Fitzgerald*; (6) Henderson is not entitled to punitive damages; and (7) any purported state law claims are barred by the South Carolina Tort Claims Act. [*See generally* ECF No. 105.] The magistrate judge granted Henderson an extension to respond to Sgt. Frierson's summary judgment motion, but Henderson never filed any response. [*See* ECF No. 118 at 1.] The magistrate judge issued the Summary Judgment Report on October 23, 2024, recommending the court grant Sgt. Frierson's motion for summary judgment and dismiss Henderson's case. [*See generally* ECF No. 118.]

Attached to the Summary Judgment Report was a notice advising Henderson of the procedures and requirements for filing objections to the Summary Judgment Report and the serious consequences if he failed to do so. [ECF No. 118-1.] The notices specifically warned Henderson

3

that if he did not timely file an objection to the Summary Judgment Report then the court "need not conduct a de novo review[] but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005)). The notice also warned Henderson his "[f]ailure to timely file specific written objections to [the Summary Judgment Report] will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation." *Id.* (internal citations omitted). Henderson did not object or otherwise respond to the Summary Judgment Report, and the time to do so has expired.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

4

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[a]n the absence of *specific* objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

Because Plaintiff is proceeding pro se, the court is charged with liberally construing the pleadings to allow him to fully develop potentially meritorious claims. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). That said, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

## DISCUSSION

Thes court is tasked with reviewing two Reports: the TRO Report and the Summary Judgment Report. The court discusses each and, for the reasons discussed below, adopts both in full.

**I.     TRO Report, ECF No. 82**

Henderson seeks a temporary restraining order and injunction granting him the following relief: (1) physical access to the law library five days a week, Monday through Friday from 8:30 am to 3:00 pm; (2) that the postal director or mailroom clerk bring and pick up a F-1 Unit roll-around "U.S. mailbox" to and from the F-1 Unit five days a week, Monday through Friday; (3) that certain individuals in the business office issue Henderson legal supplies whenever he requests them; (4) that he receive an appointment with a podiatrist and that Lee C.I. medical personnel order certain orthopedic shoes for him; (5) that he receive an appointment with a cardiologist at MUSC

Prisma Health; and (6) that Lee C.I. officials transfer him to the Columbia Regional Care Center. [*See* ECF No. 76 at 13–14.] The magistrate judge recommends the court deny Henderson's motions for four reasons: (1) Sgt. Frierson, a *former* employee of SCDC, cannot implement any of the relief Henderson seeks; (2) Henderson has not lodged an access to courts claim or Eighth Amendment claim for failure to transport him to outside medical appointments against Sgt. Frierson; (3) alternatively, Henderson has not satisfied the requirements necessary to issue a preliminary injunction; and (4) decisions concerning day-to-day prison operations are entrusted to the officials of the institution or correctional system. [*See* ECF No. 82 at 3–4.] Henderson objects to each of these findings, so the court addresses them in turn below.

First, Henderson objects to the magistrate judge's conclusion that Sgt. Frierson, a *former* employee of SCDC, cannot implement any of the relief Henderson seeks as "lack[ing] merit." [*See* ECF No. 96 at 4.] The court disagrees. Injunctive relief binds "*only*" the parties; their officers, agents, servants, employees, and attorneys; and anyone else in "active concert or participation" with any of these individuals. Fed. R. Civ. P. 65(d)(2) (emphasis added). Henderson does not dispute that Sgt. Frierson is no longer employed by SCDC. Nor does he suggest that the individuals who are currently, allegedly impeding Henderson's access to the material and treatment he seeks are Sgt. Frierson's agents or servants or are otherwise acting in active concert with Sgt. Frierson. At bottom, Henderson asks the court to compel individuals and entities *not* parties to this lawsuit to take certain actions. Because those individuals are not parties to this case, the court cannot do so. The court thus overrules Henderson's objections here.

The magistrate judge next recommends the court deny Henderson's motions on the grounds Henderson has not lodged an access to courts claim or Eighth Amendment claim for failure to

transport him to outside medical appointments against Sgt. Frierson. [ECF No. 82 at 3.] Henderson objects to this finding, arguing his need for injunctive relief is evidenced by his motions requesting injunctive relief. Here, again, the court disagrees.

Interim equitable relief, such as a temporary restraining order or preliminary injunction, "protect[s] the movant, during the pendency of the action from being harmed or further harmed in the manner in which the movant contends it was or will be harmed *through the illegality alleged in the complaint.*" *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (emphasis added). The court "may never issue" an injunction "to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Id.* Instead, the movant "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* (internal citation omitted).

Henderson's claims against the sole defendant—Sgt. Frierson—arise from the January 2022 incident where Sgt. Frierson sprayed him with chemical munitions. His claims and allegations against Sgt. Frierson do not in any way relate the alleged injuries and harms that form the basis of his injunction motions. His claims against the sole defendant in this case, then, are not related to the injury he claims in his motions. To be sure, his amended complaint does contain allegations concerning conditions he was subject to at Lee C.I. and include requests directed toward medical and mental health personnel. *See generally* Am. Compl. But, as noted above, those individuals are not parties to this action. So, even if *those* allegations could be construed to assert a claim of access to courts or an Eighth Amendment claim, those claims are asserted against

7

non-parties and, thus, are not within the scope of Rule 65.  The court thus overrules Henderson's objections.

The TRO Report also addresses alternative grounds for denial of relief.  The magistrate judge there recommends denying Henderson's request for injunctive relief because he has not demonstrated he is entitled to equitable relief under the factors set forth in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), and, in any event, courts must afford prison administrators substantial deference in day-to-day affairs.  [*See* ECF No. 82 at 4.]

To obtain injunctive relief, Henderson must establish *each* of four factors: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  Even assuming—without deciding—Henderson could satisfy some of these factors, he has not established a likelihood of success on the merits.  As discussed above, the relief Henderson seeks in his motions is wholly untethered to his claims against Sgt. Frierson, the sole defendant in this matter.  Neither Henderson's motions nor objections address the merits of his claims against Sgt. Frierson.  This notably distinguishes cases Henderson points to in his objections where courts granted inmates injunctive relief.  *See, e.g.*, *Bear v. Kautzky*, 305 F.3d 802 (8th Cir. 2002) (granting preliminary injunction enjoining enforcement of policy in action challenging the policy); *Newsome v. Norris*, 888 F.2d 371 (6th Cir. 1989) (affirming district court's grant of preliminary injunctive relief reinstating inmates to

their former positions in action challenging inmates' removal from positions).[1]  He thus has not established a likelihood of success on the merits, and his motions fail for that reason.

Nor is the court convinced Henderson is likely to suffer irreparable harm if the court denies his requested relief.  Henderson notes in his objections that, as of July 3, 2024, he exhausted his legal supplies for the month of July 2024 and alleges he is not permitted to access the law library, satellite computer, photocopy machine, a law clerk, and that he is not permitted any furniture to write on.  [*See* ECF No. 96 at 7.]  But as Sgt. Frierson notes, Henderson's filings in this case are legion.  In July alone, Henderson filed four replies to pending motions, a letter, a motion to compel, and the objections to the TRO Report.  And in August 2024 Henderson filed two appeals of the magistrate judge's earlier decisions and a reply to his motion to compel.  Put simply, there is no evidence in the record that Henderson is likely to suffer irreparable harm if the court does not allow him the injunctive relief he seeks.  Moreover, Sgt. Frierson presented evidence—that Henderson does not challenge—that Henderson was transported to the Central Office Annex location on March 11, 2024, for medical assistance.  [*See* ECF No. 79-1 at 10.]

For these reasons, the court overrules Henderson's objections, adopts the TRO Report, ECF No. 82, and incorporates it by reference herein.

---

[1] Henderson points to a third case, *Johnson v. Sullivan*, 2008 WL 5396614 (E.D. Cal., Dec. 23, 2008), where the court granted the inmate a preliminary injunction allowing him access to counsel. The court there did not make any finding as to the prisoner's likelihood of success on the merits, so that decision is of limited utility here.

## II.    Objections to the Magistrate Judge's Decisions.

The magistrate judge denied three of Henderson's other motions during this litigation: (1) a motion for copies, ECF No. 39; (2) a motion for entry and inspection upon land, ECF No. 75; and (3) a motion for the appointment of an expert witness, ECF No. 77.  Henderson filed objections to each of these motions.  *See* ECF Nos. 43, 108, 109.  The magistrate judge later vacated his order denying Henderson's motion for copies, *see* ECF No. 48, but Henderson's "appeals" of the latter decisions remain pending.  Though the magistrate judge's decisions are not Reports and Recommendations for the court to ultimately rule on, out of an abundance of caution the court re-examines Henderson's motions and considers his objections as set forth below.

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters.  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).  The objections must be filed and served "within 14 days after being served a copy" of the non-dispositive order.  Fed. R. Civ. P. 72(a).  Further, the court's review is governed by the "clearly erroneous" or "contrary to law" standard of review.  *Id.*  Only if the decision is "clearly erroneous or contrary to law" may the district judge modify or set aside any portion of the decision.  *Id.*  A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948).

### 1.    Motion for Entry and Inspection Upon Land, ECF No. 75

On May 21, 2024, Henderson served a request for entry and inspection upon land on Sgt. Frierson, requesting leave to "inspect by videorecorder cell #31 F-7 North Wing; the security surveillance footage(s) for the date of 1-27-22; [and] access to [his] medical/mental health records." [ECF No. 80-1 at 1.]  Henderson also requests Sgt. Frierson permit him or a court

representative to: (1) record all aspects of the interior of cell #31, certain partes of the exterior, and certain mattresses; (2) view the surveillance footage showing the incident with Sgt. Frierson; (3) view his medical records from January 1, 2020, to the present; (4) view a copy of SCDC's "Use of Force" policy; (5) "hear" the verbal exchange that transpired between himself, Sgt. Frierson, and another individual not a party to the lawsuit; (6) to test the temperature in cell #31; and (7) to record, observe, and smell the smock and blanket issued to inmates. *See id.* at 2–4. Henderson requests these inspections cover a period of seven days, beginning on Monday and ending on Sunday and taking place during the hours of 8:00 pm until 10:00 pm. *Id.* at 4–5.

Henderson filed his motion for entry and inspection upon land pursuant to Rule 34, FRCP, on June 3, 2024. [*See* ECF No. 75.] Sgt. Frierson timely opposed the motion, which generally mirrors Henderson's earlier requests. [*See* ECF No. 80.] The magistrate judge denied Henderson's motion on the grounds the motion is untimely. [*See* ECF No. 103.] Henderson filed objections to the magistrate judge's order a few weeks later. [*See* ECF No. 109.] Having thoroughly considered Henderson's motion, Sgt. Frierson's objection, the magistrate judge's ruling, and Henderson's objections, the court denies the motion for the reasons below.

The court agrees with the magistrate judge: Henderson's motion is untimely. The parties' scheduling order identified May 31, 2024, as the deadline for the parties to conclude discovery. [*See* ECF No. 68.] The scheduling order also required the parties to serve all discovery requests "in time for the responses thereto to be served by this date." *Id.* Rule 34 provides the party to whom the request is directed 30 days after service to respond to the requests. Fed. R. Civ. P. 34(b)(2). So, to satisfy the scheduling order's directives Henderson would have needed to serve his requests on Sgt. Frierson no later than May 1, 2024. He did not do so. Even if the court were

11

to consider Henderson's requests made at the earliest possible date—May 15, 2024, the date on the certificate of service Henderson included with his requests to Sgt. Frierson—the requests would still be untimely, as they do not allow Sgt. Frierson sufficient time to respond to the requests before the discovery deadline expired.  So, the court agrees with the magistrate judge: Henderson's requests—whether the initial requests or those included in his motion—are untimely.

Henderson's objections largely concern his request that the court consider his extenuating circumstances—chief among them that he is incarcerated, proceeding pro se, and untrained in the law—and his speculation that Lee C.I. officials are engaged in a campaign to "see [him] lose this suit."  [ECF No. 108 at 5.]  But even if Henderson's requests *were* timely, the magistrate judge was nonetheless correct to deny Henderson's motion because the requests are disproportionate to the needs of the case and unduly burdensome under Rule 26(b)(1).  Henderson's motion, which largely mirrors his earlier requests, requests the court allow him to conduct a weeklong inspection of cell #31 to take place between the hours of 8:00 pm and 10:00 pm or 8:00 am and 12:00 pm.  [*See generally* ECF No. 75–1.]  The requests generally relate to Henderson's complaints about the conditions of his confinement, which are not issues that are before the court in this litigation.  And Henderson does not dispute that Sgt. Frierson has, in Sgt. Frierson's words, "already produced hundreds of pages of documents and served written responses" to Henderson's discovery requests.  [ECF No. 80 at 3; *see also* ECF No. 108 (not addressing Sgt. Frierson's discovery production).]

Finally, Sgt. Frierson argues allowing the inspection "would also disrupt the security of inmates currently housed in that wing and would compromise institutional security as [Henderson] would record or ascertain information, patterns, and monitoring techniques utilized by the institution and SCDC staff essential to maintaining safety and security of the institutions."  [ECF

No. 80 at 3.] The court agrees. Henderson is no longer housed in that particular unit, and, given the disproportionality of the requests to the subject matter of the case, the court agrees that it would be unduly burdensome to require SCDC staff to overcome the necessary security hurdles required to comply with Henderson's requests. For these reasons, the court overrules Henderson's objections and denies Henderson's request for entry and inspection upon land.

### 2. Motion for Appointment of Expert Witness, ECF No. 77

Henderson also moved the court to appoint an expert witness pursuant to Rule 706, FRE. [*See* ECF No. 77.] The grounds for Henderson's request are that the court "is not familiar with the everyday functions of a prison environment," so, appointing "a corrections expert with expertise knowledge on the use of force in prisons is imperative to the litigation of this suit . . . ." [ECF No. 77 at 3.] The magistrate judge denied Henderson's motion, noting the court does not appoint experts for plaintiffs in civil cases. [*See generally* ECF No. 101.] Henderson objects to the ruling, arguing the magistrate judge misapprehended this request: Henderson does not want the expert appointed for himself, but for *the court*. [*See* ECF No. 109 at 2.] Having, out of an abundance of caution, conducted a *de novo* review of Henderson's motion, the court overrules his objections and denies the motion.

Rule 706 allows the court, on motion or *sua sponte*, to order the parties to show cause why an expert should not be appointed. Rule 706(a), F. R. Evid. "Rule 706 contemplates the appointment of an expert to aid the court, and not for purposes of enabling a particular litigant to prove his case." *Jones v. Broadwell*, Case No. 5:10-CT-3223-FL, 2014 WL 2812531, at *3 (E.D.N.C. June 23, 2014); *see also Tyler v. Hudson*, Case No. 9:22-cv-1544-MGL-MHC, 2022 WL 17156939, at *2 (D.S.C. Nov. 3, 2022) ("[T]he appointment of an expert under Rule 406 is

13

not intended to further partisan interests of any party, but to aid the Court, through the services of an impartial expert, in its assessment of technical issues."), *report and recommendation adopted* 2022 WL 17128623 (D.S.C. Nov. 22, 2022).

Having carefully considered Henderson's motion and objections, the court concludes no expert is needed to aid in its assessment of Henderson's claims. Henderson does not meaningfully argue, and the court does not find, that determining whether Sgt. Frierson employed excessive force requires any sort of scientific or technical analysis that would benefit from expert testimony. The issues in this case are relatively complex and straightforward, so the court sees no need to appoint an expert at this time. It thus overrules Henderson's objections to the magistrate judge's order and denies Henderson's motion for appointment of an expert.[2]

### III.     Summary Judgment Report, ECF No. 118

As noted above, the magistrate judge recommends the court grant Sgt. Frierson's motion for summary judgment and dismiss Henderson's claims. Henderson did not object to the Summary

---

[2] In several of his motions Henderson requests the court appoint a court-designated representative to, among other things, assist with requested inspections. To the extent Henderson's requests can be construed as a request for appointment of counsel, the court denies such a request. There is no constitutional right to counsel in a civil case. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *see Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25–27 (1981). The court should only exercise its discretion to request appointment of counsel for an indigent in a civil action "in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Whether exceptional circumstances exist depends on (1) the type and complexity of the case; and (2) the abilities of the litigant. *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989); *Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982).

There are no exceptional circumstances that warrant appointment of counsel here. As noted above, Henderson's claims are not overly complex. And Henderson has consistently demonstrated his ability to represent his interests, communicate with the court, and prosecute his action. To the extent Henderson's requests for a court-designated representative can be construed as a request for appointment of counsel, then, the court denies any such requests.

Judgment Report within the allotted time. The court is charged with making a *de novo* determination of only those portions of the Report that have been specifically objected to, and the court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). As noted above, the court is not required to provide an explanation for adopting the Summary Judgment Report if no party objects to it; instead, the court must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond*, 416 F.3d at 315 (citing Fed. R. Civ. P. 72 advisory committee's note).

Having thoroughly reviewed the Summary Judgment Report, the applicable law, and the record of this case in accordance with the above standard, the court finds no clear error, adopts the Summary Judgment Report, ECF No. 118, and incorporates it by reference herein. The court thus grants Sgt. Frierson's motion for summary judgment and dismisses Henderson's claims.

## CONCLUSION

After thoroughly considering the parties' briefing, the Reports, Henderson's objections to the TRO Report, and the applicable law, the court overrules Henderson's objections to the TRO Report and adopts the TRO Report, ECF No. 82, in full. The court also adopts the Summary Judgment TRO, ECF No. 118, in full. The court thus **GRANTS** Sgt. Frierson's motion for summary judgment and dismisses Henderson's claims with prejudice.

**IT IS SO ORDERED.**

December 20, 2024                                           Sherri A. Lydon
Columbia, South Carolina                              United States District Judge